O’Brien, J.
(dissenting.)—On the 27th of August, 1886, the defendants, under the name of the Union Bridge Company, secured .the contract for the construction of the bridge across the Hudson River at Poughkeepsie, for which they were to be paid two million dollars. The contract has been performed by the defendants and they have been paid the stipulated compensation. 'This action is based upon the allegation that the plaintiffs were instrumental in procuring the contract for the defendants and for which services the defendants agreed to pay the plaintiffs the sum -of $100,000. The complaint avers that the plaintiffs and defendants entered into an agreement, by the terms of which the plaintiffs promised to assist, further and aid the defendants in procuring the contract for the construction of the bridge, and the defendants, in consideration thereof, promised to pay the plaintiffs for such services, in the event of procuring the contract, the sum above mentioned. That in consequence of the services, aid and influence of the plaintiffs to that end, the contract was awarded to the defendants, but that they have not paid to the plaintiffs the compensation for the services promised and neglect and refuse to pay the same. At the close of all the evidence the trial judge *744 directed a verdict for the defendants, to which the plaintiffs excepted. There is no question made as to the legality of the contract upon which the action is based, the only point of controversy being, whether the agreement alleged was in fact made. In reviewing the judgment, the plaintiffs are entitled to the most favorable view that can be taken of the evidence in support of their claim, and if there were any disputed questions of fact in the case upon which the plaintiffs had given evidence competent and sufficient to submit to the jury, we must hold that the direction was erroneous. The judgment cannot be upheld unless it is made to appear that, within settled rules applicable to cases where a nonsuit is ordered or a verdict directed, there was no evidence of the contract alleged given sufficient for the consideration of the jury.
There is no dispute as to the fact that for several months prior to August, 1886, active negotiations were on foot and pending for consummating two contracts in reference to the construction of this bridge. The first and most important one, and that upon which the other depended, was the contract between the plaintiffs and the Manhattan Bridge Building Company for marketing the bonds of the Poughkeepsie Bridge Company, which were to be or had been issued, to the amount of five million dollars, and from the sale of which bonds, alone, the money was to be procured for the expense of the enterprise. This contract was completed on the same day and at the same place as the contract by the defendants for performing the work and furnishing the materials. The plaintiffs by this contract undertook to place the bonds and furnish from the proceeds the funds by means of which the contractors were to be paid. They were also to make advances to the contractors, when money was not on hand from sales of bonds, but of their own funds. For these services and advances the plaintiffs, were to be paid commissions and interest in cash and in stock of the bridge company to a large amount, but the Manhattan Bridge Building Company were given the power to terminate this contract on ten days notice, and this right was actually exercised after the plaintiff had expended several thousand dollars in advertising and preparing to market the bonds, and before he had sold to exceed $300,000 of them.
But during all the negotiations it seems to have been assumed by all the parties that the plaintiff was to have this contract, and that as a banker and broker he was the person to whom all the parties looked to raise the money out of which the contractors, whoever they might be, were to be paid and the bridge built It is obvious that the position which the plaintiff occupied in this respect gave him great power and influence in all matters relating to the enterprise, and it would seem quite reasonable to suppose that he could be, if he so desired, of great assistance to the defendants in procuring the contract for construction and, from the plaintiff’s version of the transaction, the defendants were willing to pay for this assistance and for the influence which the plaintiffs were in a position to exercise, with respect to the disposition of the contract for building. There is evidence in the case tending *745 to prove that some three months prior to the contract of August 27, 1886, there was a verbal agreement made between the plaintiffs and defendants to the effect that the plaintiffs would aid and assist the defendants in procuring the construction contract and the defendants, in case they succeeded in procuring the same, would pay plaintiffs for their services in that respect a commission of five per cent on the price, up to one hundred thousand dollars. There is evidence also that the plaintiffs interested themselves with the promoters of the enterprise, in behalf of the defendants, and that they used their position and their powers of persuasion for the purpose of procuring the contract for the defendants. They told some of the parties who had the power to award the contract that if they, the plaintiffs, were to undertake the sale of the bonds, they wanted the construction contract to go to the defendants. lienee there was evidence in the case tending to show that the plaintiffs at least partially performed the agreement to aid and assist the defendants in procuring the contract. If it was material to determine how far the actual award of the contract to the defendants was due to the efforts of the plaintiffs in that direction, the question was one for the jury.
About two hours before the two contracts above mentioned were executed, and while they were awaiting the signature of the parties in the office of the attorney by whom they were drawn, one of the defendants came to the plaintiffs’ office by request for the purpose of giving some written evidence to the plaintiffs of the agreement, under which the defendants were to compensate the plaintiffs for their services and influence in procuring the construction contract. This agreement, though partially performed, if the testimony of the plaintiff is to be accepted, still rested in words and was not evidenced by any writing whatever. The plaintiffs informed the defendants that they wanted some written memorandum to show what the actual agreement was. When Mr. Clarice, of the defendants’ firm, called at the plaintiffs’ office both he and Mr. Gfallaudet were in a hurry to meet their appointment to attend at the office of the attorney where the construction contract and that for marketing the bonds, both of which were then drawn, were to be executed. The former on coming into the office called for writing materials and immediately drew and signed the following paper :
“ The Union Bridge Company agrees to pay P. W. Gfallaudet A Co. a commission of five (5) per cent up to the amount of one hundred thousand dollars ($100,000) to be deductedpro rata from each cash payment to the Union Bridge Co. from the money received from sale of bonds of the Poughkeepsie Bridge Co. for assisting, furthering and aiding said Union Bridge Company in the financial arrangement necessary to complete said bridge within the specified time of contract.
“ Kew York, August 27, 1886.
“ Union Bridge Co.,
“ Witness: W. B. Cox.” “ per Thomas C. Clarke.
St. Bep., Yol. XLV. 94
*746 It will be seen that the consideration expressed in this instrument for the payment of $100,000 to the plaintiffs is not the' services rendered or to be rendered in aiding and assisting the defendants to procure the construction contract, but “ for assisting, furthering and. aiding said Union Bridge Company in the financial arrangements necessary to complete said bridge within the specified time of contract,” and the defendants claim that the promise was wholly dependent upon the performance of the contract by. the plaintiff to place and market the bonds, and as that contract was terminated by the Manhattan Bridge Company, the other-party to it, and that as no financial aid could be or was rendered by the plaintiffs to the defendants, no part of the promised commission ever became due to the plaintiffs.
The defendants claim that this writing correctly states the terms of the only contract they had with the plaintiffs for the payment of a commission up to one hundred thousand dollars, and upon this point the defendants succeeded at the trial. The disposition of the case in this court must depend entirely upon the effect which, under all the circumstances disclosed, should be given to this paper. The general rule invoked by the learned counsel for the defendants, that all oral negotiations are merged in a subsequently executed written contract concerning the matters which were the subject of the negotiations, cannot be questioned. But, here a valid contract without writing had been made, according to the plaintiff’s testimony, months before, and existed prior to and independent of the execution of the paper. Not only had the agreement been made but it had been partially, if not substantially performed, if the plaintiffs’ claim is sustained as matter of fact. The formal execution of the written contract for the construction of the bridge was all that remained to be done before-the commissions were earned or payable, but the service for which the commission was to be paid had been entered upon and performed before. In such a case, where parties enter into a valid oral contract, and it has been wholly or partially performed,, mutual rights and obligations spring up that are not merged in or obliterated by a subsequent writing made and signed, as in this case, by one of the parties, for the purpose of furnishing written evidence of the terms of the previously existing oral agreement, unless the writing is accepted by both parties as embodying what before existed only in verbal promises, and was intended to take the place of the verbal agreement The rule that all paroi negotiations are merged in the writing does not apply to a case where a previously existing verbal contract has been acted upon and one of the parties subsequently signs and delivers a paper purporting to embody what before rested in paroi. Beach v. Raritan & Del. Bay R. R. Co., 37 N. Y., 462-3 ; Bostwick v. B. & O. R. R. Co., 45 id., 712; Guillaume v. Gen. Trans. Co., 100 id., 491; Brigg v. Hilton, 99 id., 517; Swift v. P. Mail S. S. Co., 106 id., 219; 8 St. Rep., 602; Routledge v. Worthington Co., 119 N. Y., 592 30 St. Rep., 195.
If the plaintiffs’ testimony was accepted by the jury they had a verbal contract which was perfectly valid, and which had been *747 performed on their part They had done the things they had agreed to do, and the contract induced by their efforts was awaiting the signature of the parties. When signed, the plaintiffs’ work was completed. If it was not signed their services counted for nothing, because the compensation was contingent upon success. But the contract was made when the minds of the parties met, and performance on the part of the plaintiffs commenced when they set themselves about using the efforts and influence contemplated, with a view to securing the contract. Now the plaintiffs having gone so far, wanted some evidence in writing of the agreement They were in the power of the defendants because they could not compel them to give any writing, but they might rely on the verbal agreement, and prove that, when the time arrived, as best they could. One of the defendants drew and signed the paper above referred to. The plaintiffs say it does not correctly state the terms of what had been agreed upon before. The defendants, in failing to deliver a writing correctly stating the terms of the agreement, and in delivering one in which these terms were misstated, could not by that act alone deprive the plaintiffs of the benefit of the agreement. The paper made and delivered by the defendants alone, under such circumstances, is not conclusive as to what the contract was, unless it was intended by both parties as the final repository of the agreement, and accepted as* such by the plaintiffs. This is the turning point of the case. The plaintiffs testify in substance that they did not accept the paper in that sense, but received and kept it as all or at least the best they could get Mr. Clarke, of the defendants’ firm, who drew the paper, said, according to the plaintiffs’ testimony, that he did not want to state in the writing the fact that the commissions were to be paid for assisting in procuring the contract, but that he intended to carry out his previous verbal promise in that regard. There is evidence in the case from which it could be found that neither party present when this paper was made and delivered understood that it contained a correct statement of the consideration and terms of the existing verbal agreement. Still, if the plaintiffs actually accepted the instrument as the final consummation of the verbal arrangement, and as embodying the evidence of the defendants’ obligations, then all previously existing verbal agreements on the subject must be deemed to be modified in accordance with its terms, and the plaintiffs were bound by it.
The learned trial judge held as matter of law that the plaintiffs accepted the instrument as a complete substitute for the previously existing verbal understanding. The defendants denied that any verbal agreement was ever made to pay the plaintiffs anything for aiding in procuring the contract, and the proof on their side was to the effect that the paper contained the whole contract between the parties and was received and accepted by the plaintiffs as such. It may be that the great preponderance of proof on this and on the other questions in the case is on the side of the defense. The only point that we are now concerned with is whether there is any evidence on the part of the plaintiffs tending to show that the paper was not so aeeepted, and we think there is. *748 As it appears in the record, it is not free from apparent contradictions, but its construction, weight and effect was for the jury. The paper could not be substituted for the verbal agreement, if it existed, unless such -was the intention of the parties, and on this point the evidence was not so conclusive as to warrant the court in disposing of the question as one of law.
The judgment should be reversed and a new trial granted, costs to abide the event
Judgment affirmed, with costs, on opinion of general term.
Earl, Ch. J., Andrews, Finch and Gray, JJ., concur. 0!Brien reads for reversal; Peokham and Maynard, JJ., concur.